## THE STATE OF CONNECTICUT *against* GIBSON SMITH.

MOTION for a new trial.

The prisoner having been convicted, on an indictment, before the Superior Court, for uttering and putting off a counterfeit bill, containing several counts, one of which only, was attempted to be proved, the jury found a general verdict of *guilty ;* held, that such finding was valid; although the jury omitted to find the prisoner *not guilty*, as to the counts not proved.

Held, also, that parol evidence was admissible, to prove that the person whose name appeared on such bill, as president, was president of the bank, by which the same purported to have been issued.

Evidence of the declarations and acts of the prisoner, and if his false representations, relating to such bill, tending to evince his knowledge of its spuriousness, admissible.

The prisoner having been convicted, at the same term, on two several informations, for uttering two several counterfeit bills, and sentenced to three years imprisonment, for each offence, the court may direct, that one term of imprisonment, shall commence at the expiration of the other.

*Upon an information for uttering and passing a*

terfeit bank note, made in imitation of the notes issued by the *New-Brunswick* bank, an incorporated bank in *New-Jersey*, knowing it to be false and counterfeit, moved for a new trial, on the several grounds hereafter stated in the opinion of this Court. The questions of law arising on such motion, being reserved in the usual manner, the cause was now argued by

*N. Smith* and *Staples*, in support of the motion; and

*Daggett* and *S. E. Dwight*, contra.

MITCHELL, Ch. J. The prisoner was indicted for uttering and putting off a counterfeit bank note, made in imitation of the notes issued by the incorporated bank of *New-Brunswick*, in *New-Jersey*, knowing it to be false and counterfeit. The indictment contained four counts. The prisoner pleaded not guilty; and the jury returned a general verdict of guilty. On the trial, evidence was offered to prove the third count only.

The first ground of the present motion, is, that the court charged the jury, that if they should find the facts set forth in either count, to be proved, they ought to find the prisoner guilty; and did not direct them to find him not guilty, upon the counts not proved.

This objection could not avail in a civil cause. For there, if the declaration contains several counts, some of which are bad, and the jury assess entire damages, the judgment may be arrested; yet, in such case, if evidence was given on the good counts only, the verdict may be amended from the minutes of the judge, who tried the cause. *Regina* v. *Ingram & ux.* 1 *Salk.* 384. But in criminal cases, the court is much less restricted; because, as is said by the court in the case cited from *Salkeld*, " there they assess the fine, and they will set it according to the facts which are well laid; if an offence sufficient to maintain the indictment, be well laid, it is enough." This distinction between criminal prosecutions and civil actions is sanctioned by the approbation of Lord

*Mansfield*, in *Grant* v. *Astle*, *Doug.* 730. ; who, after regretting the establishment of the rule above mentioned, adds, as to civil actions, " that what makes that rule appear more absurd, is, that it does not hold in the case of *criminal prosecutions* ; for, when there is a general verdict of *guilty*, on an indictment consisting of several counts, if any one of them is good, it is held to be sufficient." This circumstance must appear by the judge's notes, and the court will apply the verdict to the count proved, and order the punishment accordingly. As it is the province of the court to apportion the punishment, and pronounce sentence upon the criminal, there can be no danger of injustice from such a procedure. In all the counts in this case, one transaction only is set forth, and one offence described in various shapes. The intention of the prosecutor herein, was, that if he should fail in the proof of one, he might, perhaps, succeed in the proof of another. But in such case, if the jury find a general verdict, it can never be a ground for a new trial, that the evidence was adapted to establish the facts set forth in one of the counts only.

2. Another ground, on which the present motion is founded, is, that the court admitted parol evidence to shew, that *J. R. Hardenburgh* was president of the *New-Brunswick* bank; which was objected to, by the counsel for the prisoner. It was urged, that this was not the best evidence which the nature of the case admitted ; that either a certificate of the vote of the corporation, by which the appointment was made, or the books of the corporation, should have been produced. There was no officer of the bank, whose certificate could have been legally admitted; and the books of the bank were not within the power or control of the prosecutor, or within the jurisdiction of the state. Independently of this consideration, the court would not make a rule to bring in the books of the corporation. In *England*, the court refused to order the books of a post-office to be brought into court, where the office was not a party ; and in another case, they refused to grant a rule to compel the bringing in of the books of a corporation,

June, 1811.

STATE
v.
SMITH.

on motion of the party, who had brought an action for taking toll illegally, by a servant of the corporation. *Hodges* v. *Atkis*, 3 *Wils*. 398.

And even, if the books of the bank had been in court, it is probable that the vote of the corporation, appointing the president, would not have shewn, that he retained the office, at the date of the bill ; as the vote might have borne date prior thereto. Hence, it appears, that parol evidence was the best evidence, which the nature of the case admitted ; and that the evidence offered was properly received.

3. It is further objected, that the Superior Court admitted evidence of a conversation of the prisoner, relative to his uttering the note in question, in which he said, that he did not know one *Abel Starks*, with whom it appeared, he came into *New-Haven*, where the bill was put off ; and in which it was claimed, that *Starks* had passed other counterfeit bills or notes, of the same bank. This testimony was offered as proof of the prisoner's science, and for that purpose, whatever he had said or done relating to the counterfeit note, was admissible. It is lawful to prove, that the prisoner attempted to utter the note, at different times and places, where it had been suspected and challenged as false ; and that he declared it to be genuine and true ; or that he attempted to secrete himself ; or avoided the officer, or other facts of a similar nature, tending to evince the science of the prisoner ; since, by the words and actions of men only, can their thoughts or knowledge be discovered.

4. Upon another indictment against the prisoner, at the same term of the Superior Court, he was convicted of putting off another similar false and counterfeit note, and the court directed, that he should be confined in New-Gate prison, three years for each offence ; and that the second confinement should commence when the first term should expire. It is urged, that this mode of accumulating the terms of imprisonment, is novel, without precedent, cruel and illegal.

The law requires, that for the first offence charged in the indictment, the prisoner shall, upon conviction, be sentenced to confinement, in New-Gate, for a term not exceeding three

years; but does not direct at what period of the prisoner's life, the term of confinement shall commence. The court are bound to become acquainted with the situation and circumstances of the prisoner, when they pronounce the sentence. If through infirmity, it should appear to be inhuman or improper to confine him to hard labour, in New-Gate, immediately upon conviction, it would be the duty of the court to postpone the commencement of his confinement, to a future day. So, if the prisoner has been previously sentenced to imprisonment in New-Gate, or any other prison, for a limited time, not then expired, by the Superior Court, or some other court of competent jurisdiction, it would be necessary to postpone the commencement of his confinement, to prevent an interference of jurisdiction. And if, for the advancement of justice, or through the exercise of mercy, the punishment may be delayed, a day, or a month, upon the same principle, it may be, for sufficient cause, postponed for one or more years, according to the discretion of the court.

In the present case, the court, upon inspecting their own records, could perceive, that the second sentence could not be executed agreeably to law, until the expiration of the first term of imprisonment. The postponement, was, therefore, necessary, to prevent the previous conviction from operating as an exemption from punishment, for a subsequent offence. No injustice is done to the prisoner; and this proceeding is neither new, nor without precedent; such has been the usage of our courts, for many years past, in this state.

I am, therefore, of opinion, that a new trial ought not to be granted.

REEVE, SWIFT, TRUMBULL, SMITH and BALDWIN, Js. concurred in this opinion.

EDMOND J. dissented, on the ground, that the court could not lawfully accumulate the terms of imprisonment; and

June, 1811.

STATE
v.
SMITH.

that, in the present case, the commencement of the terms of confinement, should have relation to the time of the convictions, respectively.

BRAINARD, J. was absent when the case was argued; and

INGERSOLL, J. having been of counsel in the cause, did ot judge.

New trial not to be granted.

---

## REGULA GENERALIS.

*At a meeting of the Judges of the Superior Court, at New-Haven, on the first Tuesday of June,* 1811:

ORDERED, that the rule established in *June,* 1809, respecting the admission of attornies to practice in the Superior Court, shall not extend to those, who, prior to that time, duly entered their names in the office of any attorney, conformable to the rules then existing, and who shall have regularly pursued their studies, and have been, or shall be, admitted, in any of the courts of Common Pleas, in this State.